UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

FAYETTEVILLE PUBLISHING COMPANY,
a North Carolina Corporation,

    Plaintiff,
vs.                                  CASE NO:

HOMETOWN NEWS, LLC,
a Florida Corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, FAYETTEVILLE PUBLISHING COMPANY, a North Carolina Corporation, sues Defendant, HOMETOWN NEWS, LLC, a Florida Corporation, and alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $75,000, exclusive of interest, costs and attorney's fees.

2. Plaintiff, Fayetteville Publishing Company, at all times material to this lawsuit, is a North Carolina corporation with its principal office located in Fayetteville, North Carolina.

3. Defendant, Hometown News, LLC, at all times material to this lawsuit, is a Florida corporation with its principal office located in Fort Pierce, Florida.

4. The parties to this proceeding are diverse as defined by 28 U.S.C. § 1332.

5. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

6. Venue in this court is proper pursuant to 28 U.S.C. § 1391(b) since the Defendant's principal place of business is located within the judicial district.

**FACTUAL BACKGROUND**

7. Fayetteville Publishing Company ("FPC") is a newspaper publishing company located in North Carolina and provides printing services for various publications in the Southeast.

8. Target Printing & Distribution ("TP&D") is a division of FPC. TP&D is a printer, serving daily and weekly newspaper publishers and publications in the southeast, including Defendant's newspaper, Hometown News.

9. Hometown News, LLC ("HTN") is Florida publishing company that publishes local community newspapers which are distributed in various counties within the State of Florida.

10. In January of 2005, HTN entered into discussions with FPC whereby FPC, through its division TP&D, would provide weekly printing services for HTN in exchange for an agreed upon price. Henceforth, FPC and TP&D are collectively referred to as "Fayetteville".

11. At HTN's request, Fayetteville provided HTN with an initial quote for the cost of printing services requested by HTN. HTN and Fayetteville reached an agreement on a mutually agreeable printing schedule and HTN completed the credit approval process.

12. As part of its initial quote, Fayetteville provided HTN with a Terms and Conditions page, which contained the following language:

> "Unless and to the extent otherwise specified in this Quotation expressly, the following terms and conditions shall apply to this Quotation, and any contract resulting there from. Customer agrees to the following terms and conditions regarding work with Target Printing & Distribution."

The Terms and Conditions page is attached and incorporated herein as "Exhibit A."

13. HTN accepted the quote provided by Fayetteville as well as the Terms and Conditions made a part thereof.

14. The Hometown News newspapers were printed on Wednesdays and circulated on Thursdays, as agreed to by HTN and Fayetteville.

15. The Terms and Conditions expressly stated that a service charge of 1.5% per month would be added to all past-due balances. The Terms and Conditions sheet further stated that if any amount due to TP&D from the Customer remained unpaid at the due date, TP&D would have the right to demand immediate payment for all obligations of the Customer, suspend further work, and change credit terms for any future work until overdue amounts were paid in full.

16. At the time the business relationship was initially formed between Fayetteville and HTN, in or around January of 2005, it was Fayetteville's normal business practice to require its customers to accept and sign the quote as well as the Terms and Conditions sheet prior to commencing any work for the customer.

17. HTN received a Terms and Conditions sheet with the initial quote from Fayetteville, thereby accepting all of the terms and conditions, including the 1.5% interest on outstanding balances.

18. From January of 2005 until on or about June 23, 2014, Fayetteville complied with its obligations under the quote and the Terms and Conditions, provided printing services to HTN and HTN accepted such printing services from Fayetteville.

19. Each month HTN received an invoice/statement from Fayetteville enumerating the amount due to Fayetteville. A copy of an invoice for services provided in May of 2014 is attached and incorporated herein as "Exhibit B."

20. From January of 2005 until April of 2007, HTN paid their bills in a timely fashion without dispute.

21. Beginning in approximately April of 2007, HTN ceased making payments in a timely manner when due.

22. Fayetteville made repeated attempts to collect the outstanding payments due it from HTN and communicated on multiple occasions with HTN in an effort to resolve the dispute. Fayetteville even offered to structure a payment plan for HTN to meet its financial obligations.

23. On or about July or August of 2008, Fayetteville informed HTN that all checks paying for monthly printing would require extra payment towards HTN's old balance from prior unpaid print jobs. HTN consented and made extra payments towards its outstanding balance on multiple occasions; however, HTN would frequently remit a lower payment amount than had been requested by Fayetteville.

24. Fayetteville continued working with HTN to help with payments, including restructuring payment plans and agreeing to withhold check deposits at HTN's request. HTN continued to inform Fayetteville that checks would be mailed and all overdue invoices would be paid.

25. On June 23, 2014, Lee Mooty, General Manager of Hometown News, LLC, informed Fayetteville that HTN was discontinuing the use of Fayetteville's printing services and terminating the business relationship. Mr. Mooty also acknowledged the debt with Fayetteville and indicated that HTN would continue to make payments each week against their balance until all invoices were paid in full. A copy of HTN's June 23, 2014 letter is attached and incorporated herein as "Exhibit C."

26. On June 23, 2014, Rhonda Graham, Fayetteville CFO, advised Mr. Mooty that due to the difficulties in obtaining payments from HTN in the past, Fayetteville required the remaining balance due it be paid in full.

27. Although HTN received printing services from Fayetteville, it failed to pay Fayetteville pursuant to the invoices. A detailed statement of the account indicates an overdue balance as of June 23,, 2014 of $1,160,784.20, attached and incorporated herein as "Exhibit D."[1]

28. On June 23, 2014, Fayetteville made a demand of HTN to pay its account in full. A copy of the demand letter is attached and incorporated herein as "Exhibit E."

29. HTN has not responded to Fayetteville's demand letter and has only recently, on August 1, 2014, provided a de minimus payment of $3,000 towards the total amount due to Fayetteville. This partial payment of $3,000 was not accepted as full payment and is not a waiver of full and timely payment.

30. Fayetteville conferred a benefit upon HTN by providing printing services per the terms of its agreement with HTN and HTN received the benefit of those services without paying for same.

31. All conditions precedent to the bringing of this lawsuit have been met, excused, and/or performed.

## COUNT I – ACCOUNT STATED

32. Plaintiff re-alleges and incorporates by reference all allegations set forth in Paragraphs 1-31 as though fully rewritten herein.

33. This is a claim for account stated against Defendant, HTN.

34. HTN ordered printing services from Fayetteville.

---

[1] Exhibit D is the most recent statement of the account and does not reflect the $3,000 payment received and applied to the account on August 1, 2014.

35. HTN expressly and/or impliedly promised to pay Fayetteville for the printing services.

36. Fayetteville relied upon the promises of HTN and provided the agreed upon printing services to HTN which HTN received and accepted.

37. Fayetteville issued an invoice to HTN each month enumerating the amount due to Fayetteville for printing services. *See* "Exhibit B."

38. HTN received Fayetteville's invoices but failed to pay for each and every invoice it received.

39. At no time did HTN object to payment of any of the invoices it received from Fayetteville or to the detailed statement of the account.

40. HTN currently owes Fayetteville $1,157,784.20 for the balance of the unpaid printing services and finance charges pursuant to the invoices received by HTN and the detailed statement of HTN's account with Fayetteville. *See* "Exhibit D." [2]

41. HTN has refused to pay the amount outstanding and/or failed to respond to the demand for payment submitted by Fayetteville. *See* "Exhibit E."

WHEREFORE, Fayetteville demands judgment against HTN for damages, together with pre-judgment interest and costs and all other relief the court deems just and proper.

## **COUNT II – OPEN ACCOUNT**

42. Plaintiff re-alleges and incorporates by reference all allegations set forth in Paragraphs 1-31 as though fully rewritten herein.

43. This is a claim for an open account against Defendant, HTN, which is being pled in the alternative.

---

[2] Exhibit D is the most recent statement of the account and does not reflect the $3,000 payment received and applied to the account on August 1, 2014.

44. Fayetteville and HTN engaged in a series of connected transactions creating an account, the amount of which can be ascertained.

45. HTN requested printing services from Fayetteville.

46. Fayetteville provided these printing services in the form of printed newspapers and HTN received and accepted the printed services from Fayetteville.

47. Fayetteville issued an invoice each month enumerating the amount due for printing services. *See* "Exhibit B."

48. HTN failed to pay Fayetteville for each and every invoice, leaving currently an unsettled debt in the amount of $1,157,784.20 for the printing services received. *See* "Exhibit D."[3]

49. HTN has refused to pay the amount outstanding and/or failed to respond to the demand for payment submitted by Fayetteville. *See* "Exhibit E."

50. HTN owes Fayetteville $1,157,784.20 for the balance of the unpaid printing services and finance charges.

WHEREFORE, Fayetteville demands judgment against HTN for damages, together with pre-judgment interest and costs and all other relief the court deems just and proper.

## COUNT III BREACH OF IMPLIED IN LAW CONTRACT

51. Plaintiff re-alleges and incorporates by reference all allegations set forth in Paragraphs 1-31 as though fully rewritten herein.

52. This is a claim for breach of implied in law contract against Defendant, HTN.

53. Fayetteville and HTN entered into a quasi-contract implied in law by their conduct in this matter.

---

[3] Exhibit D is the most recent statement of the account and does not reflect the $3,000 payment received and applied to the account on August 1, 2014.

54. Fayetteville provided printing services to HTN, and thus conferred a benefit on HTN.

55. HTN authorized the provision of such services and thus had knowledge of, and appreciated, the benefit.

56. HTN accepted the services provided by Fayetteville and retained the printed newspapers sent to it each week.

57. The circumstances are such that it would be inequitable for HTN to retain the benefit of the services provided by Fayetteville without paying fair value for those services.

58. In the event it is determined there is no agreement as to price, Fayetteville is entitled to recover the reasonable value of its services.

59. The reasonable value of the services provided by Fayetteville is reflected by their invoice charges as stated in the detailed statement of account. *See* "Exhibit D." [4]

WHEREFORE, Fayetteville demands judgment against HTN for damages, together with pre-judgment interest and costs and all other relief the court deems just and proper.

## COUNT IV UNJUST ENRICHMENT

60. Plaintiff re-alleges and incorporates by reference all allegations set forth in Paragraphs 1-31 as though fully rewritten herein.

61. This is a claim for unjust enrichment against Defendant, HTN.

62. HTN requested printing services from Fayetteville.

63. Fayetteville provided printing services as requested and HTN received and accepted the printed newspapers from Fayetteville voluntarily and with full knowledge thereof.

---

[4] Exhibit D is the most recent statement of the account and does not reflect the $3,000 payment received and applied to the account on August 1, 2014.

64. Fayetteville issued an invoice each month enumerating the amount due for printing services. *See* "Exhibit B."

65. HTN failed to pay Fayetteville for each and every invoice.

66. HTN has refused to pay the amount outstanding and/or failed to respond to the demand for payment submitted by Fayetteville. *See* "Exhibit E."

67. HTN owes Fayetteville $1,157,784.20 for the balance of the unpaid printing services and finance charges.

68. It would be inequitable for HTN to retain the benefit of the printed newspapers received from Fayetteville without tendering payment for the value thereof to Fayetteville.

WHEREFORE, Fayetteville demands judgment against HTN for damages, together with pre-judgment interest and costs and all other relief the court deems just and proper.

Respectfully submitted,

BUSH GRAZIANO RICE & PLATTER, P.A.

/s/ H. Hamilton Rice III
H. Hamilton Rice III
Florida Bar No. 985650
Anthony M. Iannacio
Florida Bar No. 144215
101 E. Kennedy Blvd., Suite 1700
P.O. Box 3423
Tampa, Florida 33601-3423
813.228.7000; 813.273.0091 (fax)
crice@bgrplaw.com
aiannacio@bgrplaw.com
Attorneys for Plaintiff